## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LUANN THERESA YANNI,

       Plaintiff,

v.                                      No. 23-cv-0435 DHU/DLM

MICHAEL O'MALLEY,
Commissioner of the Social Security Administration,

       Defendant.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on Plaintiff Luann Theresa Yanni's Motion to Reverse for Immediate Benefits with Supporting Memorandum (Motion to Reverse). (Doc. 26.) Having considered the record, submissions of counsel, and relevant law, I recommend the Court grant the Motion to Reverse and remand this matter with an order for an award of immediate benefits.

### I.    Procedural History

On January 4, 2012, Yanni filed concurrent claims for Title II disability insurance benefits and Title XVI supplemental security income, alleging a disability onset date of September 30, 2005. (Administrative Record (AR)[2] 172, 193, 2984.) Ms. Yanni alleges disability due to head and back injuries from a slip and fall at work. (AR 478.) Her date last insured was December 30, 2010.

---

[1] United States District Judge David H. Urias entered an Order of Reference Relating to Social Security Appeals on June 1, 2023, referring this case to the undersigned Magistrate Judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 11.)

[2] Document 39 contains the sealed Administrative Record. The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

(AR 2753.) Since applying for benefits, Yanni has sought judicial review of the Commissioner's decisions four times, including the present appeal. I briefly summarize the prior proceedings here, and because they are pertinent to Yanni's arguments, describe them in greater detail in the analysis below.

Yanni's applications were denied initially on May 7, 2012, and upon reconsideration on March 7, 2013. (AR 26, 115.) Administrative Law Judge (ALJ) Myriam C. Fernandez Rice held a hearing on her applications and issued an unfavorable decision finding Yanni not disabled. (AR 26–36.) After the decision was issued, Yanni submitted a medical source statement by Dr. Whalen and sought review by the Appeals Council (AC), which was denied. (AR 1203, 1118-24.) On appeal to the United States District Court of the District of New Mexico, Magistrate Judge Steven C. Yarbrough concluded that the Commissioner "failed to apply the correct legal standard in evaluating the opinion of Plaintiff's treating physician, Dr. Thomas Whalen" and remanded the matter for the Commissioner to conduct that analysis. (AR 1201.) *See Yanni v. Colvin*, No. CV 15-935 SCY, 2017 WL 3397382, at *1 (D.N.M. Mar. 21, 2017).

While litigation was pending, Yanni filed subsequent Title II and Title XVI claims on September 2, 2015, which were consolidated by the AC in its Order Remanding Case to Administrative Law Judge. (AR 1213.) ALJ Stephen Gontis held a hearing, after which he found that Yanni could perform a limited range of sedentary work and concluded that Yanni was disabled as of January 15, 2016, the day Yanni's age category changed, but not before then. (AR 1048-96, 1018–1035.) On appeal of the partial denial, then-Chief Magistrate Judge Carmen Garza found that ALJ Gontis failed to "adequately explain why he only gave partial weight to Dr. Whalen's opinions" contrary to Magistrate Judge Yarbrough's order and remanded for the Commissioner to

do so. (AR 2239-61, 2264.) *See Yanni v. Saul*, No. CV 18-1195 CG, 2019 WL 5595182, at *2 (D.N.M. Oct. 30, 2019).

After a third hearing on May 29, 2020, ALJ Gontis again denied Yanni's application for benefits from September 30, 2005, through January 14, 2016. (AR 2159-87.) After Yanni appealed for the third time, the Commissioner voluntarily remanded the matter. (AR 2840-45.) In its Affirmation and Order, the AC found that ALJ Gontis still did not follow the Court's order to provide an adequate evaluation of Dr. Whalen's opinions. (AR 2848-55.)

On April 7, 2022, ALJ Lindsay held a hearing, at which Yanni, Vocational Witness ("VW") Thomas Bott, and Medical Expert ("ME") John Kwock, M.D., testified. (AR 2778-2810.) Yanni was represented by counsel. *Id*. On May 11, 2022, ALJ Lindsay issued the unfavorable decision now before the Court. (AR 2747-77.)

Yanni appealed to the AC by filing specific objections and additional evidence in the form of Dr. Whalen's responses to interrogatories (the Whalen Responses). (AR 2973-76, 3046-49.) The AC found the Whalen Responses did "not show a reasonable probability that [they] would change the outcome of the decision" and "did not exhibit th[at] evidence." (AR 2707.) In addition, the AC found that ALJ Lindsay had complied with Judge Garza's mandate. (AR 2706.) The AC's action made ALJ Lindsay's decision the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Yanni appealed that decision to this Court on May 19, 2023. (Doc. 1.)

## II.   The Sequential Evaluation Process and ALJ Lindsay's Findings

"The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 20 C.F.R. § 416.905(a). In determining whether a claimant is eligible for disability benefits, the Commissioner follows a sequential evaluation process. 20 C.F.R. § 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

Claimants have the burden at the first four steps of the process to show: (1) they are not "doing substantial gainful activity"; (2) they have a severe impairment or combination of impairments that has lasted or is expected to last for at least one year; and (3) their impairments meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimants' residual functional capacity (RFC), they are unable to perform their past relevant work. 20 C.F.R § 416.920(a)(4)(i)–(iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The RFC is an assessment of how claimants' impairments affect their capacity to work and of what they "can still do despite' their limitations. SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient [RFC] to perform work in the national economy, given [the claimant's] age, education, and work experience." *Grogan*, 399 F.3d at 1261; *see also* 20 C.F.R. § 416.920(a)(4)(v).

At Step One, ALJ Lindsay found Yanni had not engaged in substantial gainful activity from September 30, 2005, through January 14, 2016. (AR at 2753.) At Step Two, the ALJ concluded Yanni had the following severe impairments: degenerative disc and joint disease of the lumbar spine; carpel tunnel syndrome; obesity, bipolar disorder, and post-traumatic stress disorder (PTSD). *Id.*

At Step Three, the ALJ found Yanni did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20

4

C.F.R. Part 404, Subpart P, Appendix 1. *Id.* At Step Four, the ALJ considered the evidence of

record and found that Yanni had the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[3] except she
> could occasionally climb ladders, ropes, or scaffolds. She could occasionally stoop
> and crouch. She was limited to frequent handling, fingering, and feeling. [Yanni]
> was able to understand, remember, and carry out simple instructions. She was able
> to maintain attention and concentration to perform and persist at simple tasks at a
> reasonable pace for two hours at a time without requiring redirection to task. She
> could have occasional interactions with the general public. She was able to interact
> appropriately with co-workers and supervisors on a superficial basis.

(AR 2755.) ALJ Lindsay found Yanni was unable to perform any of her past relevant work.

(AR 2762.) She further found, considering Yanni's RFC, age, education, work experience, the

VW's testimony, the record, and applicable guidelines, Yanni could perform representative jobs

existing in the national economy and, therefore, was not disabled from September 30, 2005,

through January 14, 2016. (AR 2763–2764.)

## III.    Dr. Whalen's Opinions

Dr. Whalen was Yanni's treating physician from December 2004 through June 2018.

(AR 293–392, 482–485, 608–654, 698–701, 706–708, 756, 1468–1484, 1598–1609, 1775–1821.)

In May 2005, Dr. Whalen diagnosed Yanni with traumatic lumbar spondylopathy, lumbar facet

syndrome, shoulder impingement syndrome, and whiplash injury to neck. (AR 689.) He opined

that she was restricted from lifting more than 25 pounds, frequent bending, and frequent change

of position, but that she could "lift up to 20 pounds occasionally or up to 10 pounds frequently and

either walk or stand to a significant degree or sit most of the time with a degree of pushing and

---

[3] Light work is defined to include work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). A job qualifies as light work when "it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

pulling arm and leg controls or both." (AR 690.) Yanni was subsequently diagnosed with annular tears,[4] lumbar degenerative disc disease, and facet arthropathy. (AR 622, 641.)

On April 9, 2014, Dr. Whalen completed a Medical Assessment of Ability to do Work-Related Activities (Physical and Non-Physical). (AR 970-71.) Dr. Whalen found that Yanni cannot maintain effort for long periods without a need to decrease activity or pace, or to rest intermittently because of pain and fatigue, and that she can occasionally lift and/or carry less than 5 pounds; can stand and/or walk (with normal breaks) for a total of less than 2 hours in an 8-hour workday; can sit (with normal breaks) for a total of less than 4 hours in an 8-hour workday; and can push and/or pull 10 pounds or less with a limitation in lower extremities. (AR 970). Dr. Whalen went on to note that Ms. Yanni can occasionally kneel but never stoop, crouch, or crawl. *Id.*

He also found that Yanni had <u>marked</u> limitations in her ability to perform activities within a schedule; maintain regular attendance and be punctual within customary tolerance; maintain physical effort for long periods without a need to decrease activity or pace, or to rest intermittently (i.e. 2-hour segments); sustain an ordinary routine without special supervision; and complete a normal workday and workweek without interruptions from pain or fatigue based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods. (AR 971.) He found she had <u>moderate</u> limitations in her ability to maintain attention and concentration for

---

[4] "An annular fissure or tear is a deficiency of one or more layers of the annulus fibrosus. . . . If an annular fissure or tear is symptomatic, it may cause one of two findings: localized pain secondary to the tear or radicular symptoms secondary to irritation of the passing nerve root. The pain may either be acute if the tear occurs suddenly or more chronic if there is a slower development of the annular fissure. If the annular fissure is locally symptomatic, it may cause pain localized deep pain worse with movements that can stress or irritate the focal annular tear. In such cases, there is no radicular nerve involvement, and the physical exam may be unrevealing. . . . An annular fissure or tear can be symptomatic without disc protrusion or herniation." Tenny S, Gillis CC. Annular Disc Tear. [Updated 2023 Aug 7]. In: StatPearls [Internet]. Treasure Island (FL): StatPearls Publishing; 2024 Jan-. Available from: https://www.ncbi.nlm.nih.gov/books/NBK459235/ (last visited July 9, 2024).

extended periods (i.e., 2-hour segments); work in coordination with/or proximity to other without being distracted by them; and make simple work-related decisions. *Id.*

Dr. Whalen cited "multi-level disc herniations with annual tears" as the basis for his opinions. (AR 970.) On physical exam of Yanni on the same day, Dr. Whalen noted: "Lumbar flexion 40, extension five with increase[d] pain on extension; facet loading positive bilaterally, [l]eft greater than right; straight leg raising causes low back pain only. Cranial 3-12 intact. Motor 5/5." (AR 3051.) He diagnosed her with lumbago, lumbosacral spondylosis, degeneration of intervertebral disc, thoracic/lumbosacral neuritis, and depression. (AR 3052.)

Approximately four years later, on August 28, 2018, Dr. Whalen completed a second Medical Assessment of Ability to do Work-Related Activities (Physical and Non-Physical) (AR 2157-58). Dr. Whalen found that Ms. Yanni can lift and/or carry less than 5 pounds, occasionally handle, finger, and push/pull bilaterally; can stand and/or walk less than 2 hours in an 8-hour workday; must periodically alternate sitting and standing to relieve pain or discomfort; and can never reach overhead or below shoulder level or kneel, stoop, crouch or crawl. (AR 2157.) She can occasionally operate foot controls with her right foot, but never with her left foot. *Id.* Dr. Whalen cited observations, records, and objective-testing as the basis for these opinions. *Id.*

Dr. Whalen also found that Ms. Yanni had <u>marked</u> limitations in her ability to (1) perform activities within a schedule; (2) maintain regular attendance and be punctual within customary tolerance; (3) maintain physical effort for long periods without a need to decrease activity or pace, or to rest intermittently; (4) sustain an ordinary routine without special supervision; and (5) complete a normal workday and workweek without interruptions from pain or fatigue based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods. (AR 2158.) He opined that she had a <u>moderate</u> limitation in the ability to maintain

attention and concentration for extended periods (i.e., 2-hour segments). *Id*. Dr. Whalen cited observations, records, and objective testing as the basis for his opinions. *Id*.

Dr. Whalen's 2014 and 2018 opinions conflict with ALJ Lindsay's determination in the RFC that Yanni can perform light work, which requires "frequent lifting or carrying of objects weighing up to 10 pounds" and "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b). (AR 2755.) In addition, the RFC conflicts with many of his opinions of Yanni's marked mental limitations. (AR 2755.)

## IV.    Legal Standards

On review of an ALJ's findings and conclusions, the Court determines whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The question as to legal error is "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse and remand if the ALJ failed to "apply correct legal standards" or "show [ the Court he or she] has done so." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). As to the ALJ's factual findings, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1991). On review of the Commissioner's decision, the Court may not reweigh the evidence or substitute its judgment for the agency's. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## V.      Discussion

Yanni first asserts that ALJ Lindsay erred by not following the Court's order and the AC's instructions to properly analyze Dr. Whalen's opinions. (Doc. 26.) She also argues that the AC erred by rejecting the Whalen Responses. *Id*. She contends that these two legal errors require remand. She also maintains that the ALJ's decision is not supported by substantial evidence because ALJ Lindsay did not address in the RFC the moderate limitations found by Disability Determination Services consultative examiner psychiatrist Paula Hughson, M.D.

For the reasons discussed below, I find ALJ Lindsay violated the "Mandate Rule" and did not follow the AC's instructions. I also find the AC erred in rejecting the Whalen Responses. I therefore recommend granting Yanni's Motion to Reverse on those grounds. Because I find remand is warranted on Yanni's first two grounds, I do not address her arguments regarding Dr. Hughson's opinions. Finally, I recommend remanding this matter for an award of immediate benefits.

### A.  The ALJ Violated the Mandate Rule by not Complying with the District Court's Order and the AC's Instructions.

The Mandate Rule applies "to judicial review of administrative decisions, and 'require[s] the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart.'" *Grigsby v. Barnhart*, 294 F.3d 1215, 1218 (10th Cir. 2002) (quoting *Wilder v. Apfel,* 153 F.3d 799, 803 (7th Cir.1998)). Strict compliance with the court's order is required. *Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128, 1132 (10th Cir. 2001). "Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989).

The Mandate Rule may not apply under "exceptional circumstances" where there has been "(1) a dramatic change in controlling legal authority; (2) significant new evidence that was not earlier obtainable through due diligence but has since come to light; or (3) if blatant error from the prior . . . decision would result in serious injustice if uncorrected." *Huffman*, 262 F.3d at 1133 (quoting *United States v. Webb,* 98 F.3d 585, 587 (10th Cir.1996)).

Similarly, an ALJ "shall take any action that is ordered by the [AC] and may take any additional action that is not inconsistent with the [AC's] remand order." 20 C.F.R. § 404.977(b), 416.1477(b). "An ALJ violates [those regulations] when he or she ignores a directive from the [AC]. That violation may or may not render the ALJ's decision legally or factually insupportable under 42 U.S.C. § 405(g)." *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1178 (10th Cir. 2020). Whether an ALJ followed the AC's directives requires careful consideration of the AC's language. *Id*.; *See Mendez v. Kijakazi*, No. 2:22-CV-00121-JHR, 2023 WL 5768296, at *5 (D.N.M. Sept. 7, 2023).

To analyze this issue, I first set forth the details of each prior decision and appeal in detail. On appeal of ALJ Fernandez-Rice's decision, Judge Yarbrough remanded for further proceedings because "a treating physician's opinion must generally be accorded controlling weight" and he could not conduct a meaningful review of ALJ Fernandez-Rice's decision because she had not made findings on the weight of Dr. Whalen's opinion as a treating physician vis á vis the opinion of a consultative psychologist, rendering her decision "beyond meaningful review." (AR 1209–1210.)

In 2018, ALJ Gontis issued a second unfavorable decision (the 2018 Decision). He gave Dr. Whalen's 2005 opinion—that Yanni "could return to work that does not require lifting more than 25 pounds . . . which is consistent with light level work"—only "some weight" because the "objective medical findings and [Yanni's] statements of difficulties with prolonged standing and

lifting are more consistent with sedentary level work . . . ." (AR 1028.) ALJ Gontis next discussed

Dr. Whalen's 2014 and 2018 findings of physical and mental limitations without specifying the

weight given them. (AR 1029–30.) Then ALJ Gontis then explained:[5]

> I give only partial weight to Dr. Whalen's evaluations because he provides no explanation for the extent of the physical and mental limitations he imposes.
>
> Moreover, the limitations he assessed are not supported by the longitudinal evidence, including his own treatment notes . . . , which show good response to treatment and 80 percent pain relief with oxycodone. Moreover, the claimant primarily identified prolonged standing and lifting as exacerbating factors and stated that she had adequate pain relief to do her activities of daily living, including shopping and helping with her family.
>
> Finally, Dr. Whalen's opinions were markedly inconsistent with his earlier opinion on May 6, 2005[,] that the claimant had a 25-pound lifting limitation and that she was precluded from frequent bending. Finally, his opinion that the claimant can perform no reaching is not consistent with the independent medical evaluation . . . or the consultative examination report . . . .

(AR 1030 (citations to the record omitted).)

On appeal, Judge Garza found that "ALJ Gontis violated the Mandate Rule by failing to

adequately explain why he only gave partial weight to Dr. Whalen's opinion[]" despite Judge

Yarbrough's order to consider it as a treating physician's opinion. (AR 2243.) First, she found ALJ

Gontis erred by stating that Dr. Whalen did not provide any explanation for his opinion of Yanni's

limitations due to back pain when, in fact, Dr. Whalen based his opinion on provocative lumbar

discography and other objective testing, and by not explaining why he rejected the other objective

record evidence supporting that opinion. (AR 2255–56.) *See Clifton v. Chater*, 79 F.3d 1007, 1010

(10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also

---

[5] I present ALJ Gontis's discussion in separate paragraphs to ease discussion of the rulings addressing his analyses and explanations.

must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

Second, Judge Garza found ALJ Gontis's finding that Dr. Whalen's opinion was inconsistent with the longitudinal evidence was conclusory because, to support that finding, ALJ Gontis "'pick[ed] and chose[]'" evidence "that was 'favorable to a finding of nondisability.'" (AR 2257 (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012)). Specifically, ALJ Gontis relied on a single medical note on March 27, 2017, to find that "oxycodone gave Ms. Yanni about 80 percent relief of her pain and allowed her to complete her activities of daily living," but did not address other records "which reflected varying information regarding Ms. Yanni's pain levels and physical abilities." (AR 2257.) She cited specific evidence in the record that supported Dr. Whalen's opinion, including records of objective findings through 2016. *Id.* (citing Dr. Whalen's treatment records at AR 334, 622, 708, 1178, 1815).) She concluded that ALJ Gontis's did not explain how he resolved the "material inconsistencies in the record." (AR 2257.)

Third, Judge Garza found that ALJ Gontis's explanation that he discounted Dr. Whalen's opinion because it was inconsistent with his 2005 opinion and the consulting examiners' opinions was too "sparse" to constitute a "specific, legitimate explanation[] for assigning partial weight to" Dr. Whalen's opinions. (AR 2259–2260.) Judge Garza noted that the "findings of a nontreating physician based upon limited contact and examination are of suspect reliability" and that an ALJ must "*explain* how any material inconsistencies or ambiguities in the evidence . . . were *considered and resolved*." (AR 2258 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) and SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996), respectively) (emphasis added by Judge Garza).)  Judge Garza therefore found that ALJ Gontis had violated the Mandate Rule "by failing to adequately explain why he only gave partial weight to Dr. Whalen's opinions" as instructed by

Judge Yarbrough. (AR 2243.) She therefore remanded the matter for further proceedings consistent with her opinion. (AR 2261.)

After another hearing, ALJ Gontis issued a third unfavorable decision in 2020 (the 2020 Decision). (AR 2162.) After copying the description of Dr. Whalen's opinions virtually wholesale[6] from the 2018 Decision, ALJ Gontis explained the weight he gave to Dr. Whalen's opinion as follows, with the substantive changes shown in bold:

> While Dr. Whalen is a treating source and his opinion therefore is afforded extra consideration, his opinions are not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" (20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). First, he provides **minimal** explanations or support for the extent of the physical and mental limitations he imposes. **While he does note that the claimant has []multi-level disc herniations with annular tears, objective studies showed that these were not as severe as Dr. Whalen's opinion would suggest. Specifically, the claimant's MRI results from May 2007 showed that she had mild disc desiccation, especially at L4-5 and L5-S1, as well as severe facet arthropathy at the L5-S1 level. There was also mild to moderate facet arthropathy, particularly on the right, at L4-5 (2F/94).**
>
> Moreover, the longitudinal evidence, including his own treatment notes discussed above, which show good response to treatment and 80 percent pain relief with oxycodone, does not support the limitations he assessed (33F/24). **In addition, his opinions are inconsistent with physical exams showing generally normal gait, strength, range of motion, sensation, and tone (1F/112, 136; 2F/15, 45; 3F/12; 6F/7; 9F/4; 14F/7). They are also inconsistent with her mental status exams, that while she was sometimes depressed or agitated, she was often cooperative with normal mood, affect, and speech (1F/108; 2F/34; 14F/7; 27F/20; 37F/3). While she consistently reported poor memory and concentration at times, she also denied memory loss and presented with intact concentration (1F/91; 18F/3, 22; 22F/6; 37F/3). Accordingly, as these opinions are not consistent with the longitudinal evidence, they are not given controlling weight but limited weight.**

---

[6] The descriptions of Dr. Whalen's opinions in the 2020 Decision are the same as those in the 2018 Decision except for minor revisions and the addition of two sentences stating that ALJ Gontis gave "limited weight" to the 2014 opinion of Yanni's mental limitations and the 2018 opinions of Yanni's physical and mental limitations. *Compare* (AR 1028–1030) *with* (2171–2172).

(AR 2173.) After Yanni appealed this decision, the Commissioner moved for remand, which the Court granted. (AR 2840-45.)

The AC then issued an order in which it found that ALJ Gontis's "decision d[id] not comply with [Judge Garza's] remand order . . . and does not provide an adequate evaluation of" Dr. Whalen's opinion. (AR 2850.) First, it noted that ALJ Gontis erred in relying only on the May 2007 MRI to find that Yanni's lower back pain was not as severe as Dr. Whalen opined because ALJ Gontis still did not address the evidence supporting Dr. Whalen's opinion as ordered by Judge Garza:

> [ALJ Gontis] acknowledged that Dr. Whalen stated, in support of his opinion, that the claimant had multi-level disc herniations with annular tears (Id.). He went on to find that physical exams and objective studies showed that these were not as severe as Dr. Whalen's opinion would suggest, noting a May 2007 MRI, which showed mild disc desiccation and severe facet arthropathy in the claimant's lower back (Id.). However, the record contains diagnostic testing, clinical evidence, and medical diagnoses that support Dr. Whalen's report of multi-level disc herniations with annular tears, and that [ALJ Gontis] did not expressly address in discounting his opinion.

(AR 2851.) In short, the May 2007 MRI alone was insufficient to show that Dr. Whalen's opinion of Yanni's physical limitations was not supported by the evidence where ALJ Gontis did not explain why he rejected the other objective evidence that *did* support that opinion. *See Drapeau,* 255 F.3d at 1214 ("[W]hen[] . . . an ALJ does not provide any explanation for rejecting medical evidence, we cannot meaningfully review the ALJ's determination."); *see also* (AR 2256). The AC identified such supporting evidence, including that identified by Judge Garza, stating that, although there were records of MRIs indicating "some improvement," Dr. Whalen "repeatedly noted positive straight leg raise and/or facet loading on examination and diagnosed the claimant with chronic lower back pain with a history of L3-4 and L4-5 annular tears and L5-S1 spondylolisthesis" from 2006 to 2012. (AR 2851–2852.) In addition, Dr. Whalen "continued to

note positive straight leg tests thereafter, diagnosing the claimant in 2014 with low back pain with multilevel lumbar disc herniations with annular tears documented on provocative lumbar discography, with concordant pain . . . ." (AR 2852.) Finally, the AC noted that, "[f]rom 2016 to 2018, Dr. Whalen diagnosed the claimant with ongoing chronic low back pain with lumbar disc herniations, annular tears, and both facet and sacroiliac arthropathy" and that "[o]ther providers also documented the claimant's history of annular tears and severe facet arthropathy. *Id*. The AC concluded, "On remand, it is necessary to re-evaluate" Dr. Whalen's opinions, "and in doing so, provide specific reasons to explain the weight assigned to *this* evidence." *Id*. (Emphasis added.). It also ordered the next ALJ to "[o]btain evidence from a medical expert related to whether [Yanni's] impairments meet or equal the severity of an impairment listed in" the regulations. *Id*.

ALJ Lindsay issued the decision now before the Court in May 2022. (AR 2764.) Her analysis of Dr. Whalen's opinion replicates ALJ Gontis's 2020 Decision word-for-word, except for the portions below in bold:

> While Dr. Whalen is a treating source and his opinion therefore is afforded extra consideration, his opinions are not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" (20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). First, he provides minimal explanations or support for the extent of the physical and mental limitations he imposes. While he does note that the claimant has multi-level disc herniations with annular tears, objective studies showed that these were not as severe as Dr. Whalen's opinion would suggest. Specifically, the claimant's MRI results from May 2007 showed that she had mild disc desiccation, especially at L4 -5 and L5-S1, as well as severe facet arthropathy at the L5-S1 level. There was also mild to moderate facet arthropathy, particularly on the right, at L4-5 ([AR 571]).

> Moreover, the longitudinal evidence, including his own treatment notes discussed above, which show good response to treatment and 80 percent pain relief with oxycodone, does not support the limitations he assessed (33F/24). In addition, his opinions are inconsistent with physical exams showing generally normal gait, strength, range of motion, sensation, and tone (1F/112, 136; 2F/15, 45; 3F/12; 6F/7; 9F/4; 14F/7). **In April 2014, the same month as his functional assessment in April 2014 (21F), his objective examination noted normal motor strength throughout and straight leg raising causing no radicular symptoms (43F/2).**

His opinions are also inconsistent with her mental status exams, that while she was sometimes depressed or agitated, she was often cooperative with normal mood, affect, and speech (1F/108; 2F/34; 14F/7; 27F/20; 37F/3). While she consistently reported poor memory and concentration at times, she also denied memory loss and presented with intact concentration (1F/91; 18F/3, 22; 22F/6; 37F/3). **In April 2014, the same month as his functional assessment in April 2014 (21F), Dr. Whalen noted that the claimant had not seen a psychiatrist or psychologist (43F/1).** Accordingly, as these opinions are not consistent with the longitudinal evidence, they are not given controlling weight but **only partial weight**.

**Dr. Whalen's opinions are inconsistent with the objective medical evidence (including his own examinations), diagnostic studies, the testimony of the medical expert who had the opportunity to review all the medical evidence of record, the claimant's daily activities, and the claimant's inconsistent allegations regarding her limitations during the period at issue.**

(AR 2760–2761.) She also added,

**It is acknowledged that at times during the relevant period at issue, the claimant did have a severe spinal impairment with some objective findings; however, objective MRI testing during the period at issue did show objective improvement in the claimant's spinal impairment . . . .**"

(AR 2761.) In support, she cited MRI results from February 2006 and January 2007. *Id*.; *See*

(AR 564–566.)

Finally, ALJ Lindsay noted that "medical expert, Dr. John Kwock[,] . . . a Board-certified orthopedic surgeon," reviewed "the medical evidence of record including Dr. Whalen's records, the records from other treating and examining sources, and diagnostic studies." (AR 2761.) Dr. Kwock "indicated [Yanni] had lumbar spine degenerative disc disease and carpal tunnel syndrome during the period at issue but doubted [she] had any objective medically determinable impairments as of January 2016" and "opined [Yanni] was capable of medium exertion and limited to frequent fingering, feeling, handling, reaching, pushing, and pulling." *Id*. ALJ Lindsay accorded Dr. Kwock's opinions only "some weight" because his "opinion that [Yanni] was capable of performing medium work is not fully consistent with the medical evidence." *Id*. Without further

discussion, she concluded that Dr. Kwock had overestimated Yanni's functional abilities, whereas Dr. Whalen had underestimated them, "as confirmed by" Dr. Kwock. *Id*.

In summary, ALJ Gontis found that Dr. Whalen's opinion was not entitled to controlling weight by pointing to the contrary evidence, including the May 2007 MRI showing no disc herniation. However, he did not explain why he rejected the evidence *supporting* Dr. Whalen's opinion. First Judge Garza and then the AC instructed the next ALJ to conduct this necessary analysis. The present question, then, is whether ALJ Lindsay did so.

I find she did not. The problem with ALJ Lindsay's Decision is that, like ALJ Gontis's 2018 and 2020 Decisions, it does not explain why she rejected the objective evidence supporting Dr. Whalen's opinion, even after Judge Garza and the AC specifically cited it. An ALJ "may not 'pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (quoting *Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir.2004). First, her one-sentence acknowledgement of "objective findings" of spinal impairment and statement that "objective MRI testing [showed] objective improvement in the claimant's spinal impairment" are not meaningfully different from the similar statements found inadequate because it does not explain how she considered or why she rejected the evidence of continuing low back pain before and, more significantly, after the May 2007 MRI. *See Ortega v. Kijakazi*, No. CV 20-1245 CG, 2021 WL 5755326, at *7 (D.N.M. Dec. 3, 2021) (the ALJ violated the mandate rule by failing to explain whether and why she ignored treatment records that were consistent with the medical source's opinion, which had been identified in a court order remanding the matter for reconsideration). ALJ Lindsay's citation of MRIs in January and February 2007 simply do not address that evidence and, therefore ALJ Lindsay repeated the errors found by Judge Garza and the AC.

Second, "even if Dr. [Whalen's] opinion is not entitled to controlling weight," ALJ Lindsay was required to "consider the pertinent factors and give good reasons for the weight [s]he ultimately assign[ed] the opinion." *Sissom v. Colvin*, 512 F. App'x 762, 765–766 (10th Cir. 2013) (internal quotation marks and citation omitted).[7] In addition to supportability and consistency, the pertinent factors are the length of the treating relationship and frequency of examination, the nature and extent of the treating relationship, and the treating physician's specialty. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Judge Garza referenced these factors in her order, as did the AC. (AR 2255, 2852 (requiring ALJ Lindsay to "[g]ive further consideration to [Dr. Whalen's] opinions . . . pursuant to the provisions of 20 CFR 404.1527 and 416.927, and explain the weight given to such opinion evidence").) There is no evidence in ALJ Lindsay's Decision that she considered these factors at all, as she does not reference Dr. Whalen's specialty, the fact that he treated Yanni from December 2004 through June 2018, or the treatments he administered. (AR 2760–2761.)

Third, as explained by both Judge Yarbrough and Judge Garza, "to the extent there are differences of opinion among the medical sources, the ALJ must explain the basis for adopting one and rejecting another, with reference to the factors governing the evaluation of medical-source opinions set out in" 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). *Reveteriano v. Astrue*, 490 F. App'x. 945, 947 (10th Cir. 2012); (AR 1208–1210, 2258). This requirement is critical when comparing the opinions of a treating physician and a physician whose opinions are based only on review of the record. As Judge Yarbrough pointed out, those opinions are not on "equal footing." (AR 1208.) *See Drapeau*, 255 F.3d at 1214; SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). A

---

[7] Unpublished decisions are not binding precedent in the Tenth Circuit but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

"treating physician's opinion is given particular weight because of his unique perspective to the medical evidence" and because a "medical professional *who has dealt with a claimant and h[er] maladies over a long period of time* will have a deeper insight into the medical condition of the claimant than will a person who . . . has only seen the claimant's medical records." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (quoting *Barker v. Shalala*, 40 F.3d 789,794 (6th Cir. 1994). It is error to reject "the treating-physician opinion . . . in favor of the non-examining, consulting-physician opinion . . . absent a legally sufficient explanation for doing so." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

ALJ Lindsay found Dr. Kwock's opinion was entitled to "some weight" because it was not "fully consistent with the medical evidence" and concluded that Dr. Kwock had overestimated Yanni's functional abilities, whereas Dr. Whalen had "severe[ly]" underestimated them "as discussed [in her analysis] and confirmed by the testimony from Dr. Kwock after reviewing all the medical evidence of record." (AR 2761.) To the extent ALJ Lindsay relied on Dr. Kwock's testimony as "confirmation" that Dr. Whalen overstated Yanni's limitations, she failed to articulate why she found the nontreating physician's opinion more persuasive than the treating physician's. *Sissom*, 512 F. App'x at 765. By not explaining how she evaluated the two opinions, ALJ Lindsay violated Judge Garza's mandate and the AC's order.

The Commissioner points to *Eggleston v. Bowen* for the proposition that the ALJ properly relied on Dr. Kwock's opinions to discount Dr. Whalen's. *See Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988); (Doc. 37 at 10.) In that case, the Tenth Circuit found no error where the ALJ relied in part on four examining physicians' findings that the claimant was not totally disabled to discount the treating physician's contrary opinion. *Id*. *Eggleston* is distinguishable because the relevant findings in that case were made by *examining* physicians, not a *consulting* physician like

Dr. Kwock, who reviewed only the record. On the sliding scale of physician opinions, the "opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson*, 366 F.3d at 1084. Moreover, the ALJ's decision rested not solely on the examining physicians' findings, but also on inconsistencies between the treating physician's own reports. *Eggleston*, 851 F.2d at 1247 ("Considering the examining physicians' findings, the inconsistencies between the reports [the treating physician] made while treating Eggleston and [his] later report, we find the ALJ did not err in not giving substantial weight to [the treating physician's] later report."). Thus, the ALJ used the examining physicians' opinions to resolve the inconsistencies between the treating physician's conflicting opinions. *Id*. Here, however, ALJ Lindsay used Dr. Kwock's opinion to discount Dr. Whalen's opinion, not to resolve inconsistencies among Dr. Whalen's own opinions. (AR 2761.) *Eggleston* is therefore unavailing.

Fourth, ALJ Lindsay states that Dr. Whalen's 2014 opinions are inconsistent with his own treatment notes on the same day. *See Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013) (affirming an ALJ''s rejection of a medical source opinion in part because it was inconsistent with objective findings from the same day). These assertions are not supported by the record because they fail to contextualize Dr. Whalen's findings and, therefore, do not render her decision compliant with Judge Garza's mandate or the AC's order. ALJ Lindsay found that Dr. Whalen's April 2014 opinion, which he stated was based on "multi-level disc herniations with annular tears," was inconsistent with his "objective examination [on the same day] not[ing] normal motor strength throughout and straight leg raising causing no radicular symptoms . . . ." (AR 2760–2761. *See* AR 970.) Dr. Whalen's note states, "Lumbar flexion 40, extension five with increase[d] pain on extension; facet loading positive bilaterally[, l]eft greater than right; straight leg raising causes low

back pain only. Cranial 3-12 intact. Motor 5/5." (AR 3051.) ALJ Lindsay infers from the note that "straight leg raising causes low back pain only" that Yanni experienced no "radicular symptoms"[8] suggesting disc herniation. (AR 2760.) However, annular tears may cause pain even in the absence of herniation. Footnote 4, *supra*. Hence, even if the lack of radicular symptoms is inconsistent with Dr. Whalen's note of disc herniation, the note is not inconsistent with pain associated with annular tears or limitations related to that pain.

Similarly, ALJ Lindsay found that Dr. Whalen's opinion of Yanni's mental limitations was not consistent with the longitudinal record because, in April 2014, "Dr. Whalen noted that the claimant had not seen a psychiatrist or psychologist . . . ." (AR 2761.) But this statement takes a portion of Dr. Whalen's note out of context. Read in full, Dr. Whalen's note states that Yanni requested "a referral to Psych[]," "she's not seen a psychiatrist/psychologist 'and quite sometimes' [sic] and she was last treated by Dr. Fredman." (AR 1470.) Dr. Gerald Fredman, a psychiatrist, treated Yanni from September 2007 through November 2008 for major depressive disorder. (AR 539–562.) Given the fact that Yanni had, in fact, seen Dr. Fredman on referral by Dr. Whalen, *see* (AR 557–562), the most natural interpretation of Dr. Whalen's note indicates that Yanni had not seen a psychiatrist or psychologist "in quite some time," not that she had never seen one. Moreover, at that visit, Dr. Whalen referred Yanni to Dr. Janice Penn, who provided mental health treatment from June 2014 to at least December 2015. (AR 1026, 1562–1596; *see also* 1917–1947.)

---

[8] "Radicular" means "of, relating to, or involving a nerve root." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/radicular (last visited July 9, 2024). "The straight leg raise test . . . is a fundamental maneuver during the physical examination of a patient with lower back pain. It aims to assess for lumbosacral nerve root irritation. This test can be positive in a variety of conditions, though lumbar disc herniation is the most common. . . . The straight leg raise test is basically a provocation test that evidences radicular irritation in the lumbosacral region by lower limb flexion and can be due to multiple causes. Radicular symptoms are primarily produced by nerve root inflammation by surrounding structures." Camino Willhuber GO, Piuzzi NS. Straight Leg Raise Test. [Updated 2023 Jun 12]. In: StatPearls [Internet]. Treasure Island (FL): StatPearls Publishing; 2024 Jan-. Available from: https://www.ncbi.nlm.nih.gov/books/NBK539717/ (last visited July 16, 2024).

This treatment note, therefore, does not contradict Dr. Whalen's opinion of Yanni's mental health limitations in 2014. This explanation for discounting Dr. Whalen's opinion is not supported by the evidence.

In sum, ALJ Lindsay's Decision violated the Mandate Rule because it did not remedy the errors in ALJ Gontis's 2018 and 2020 Decisions. The Commissioner does not argue that this case falls within any of the exceptions to the Mandate Rule. (Doc. 37.) Hence, remand is warranted on this ground.

## B. The AC Should Have Considered the Whalen Responses.

Yanni argues that remand is required because the AC improperly rejected the Whalen Responses and denied review of her case. (Doc. 26 at 6.) The AC must review a case when the claimant submits additional evidence after the ALJ's decision if (1) the additional evidence "is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision," and (2) the claimant shows good cause for why the evidence or notification of its existence was not provided before the decision. 20 C.F.R. §§ 404.970(a)(5), (b) and 416.1470(a)(5), (b); *see Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). In other words, the claimant must show the additional evidence qualifies for consideration under these prerequisites before the AC is required to review the case. *See Padilla v. Colvin*, 525 F. App'x 710, 712 (10th Cir. 2013) (describing the *Threet* Factors as "predicate requirements . . . [for] consideration" by the AC); 20 C.F.R. §§ 404.970(a) and 416.1470(a) ("The Appeals Council will review a case . . . if" the factors are met); *See also* 20 C.F.R. § 404.979 ("After it has reviewed all the evidence in the administrative law judge hearing record and any additional evidence received, *subject to the limitations on* [*AC*] *consideration of additional evidence in § 404.970*, the Appeals Council will make a decision or

remand the case to an administrative law judge." (Emphasis added.)); SSA Hearings, Appeals &

Litigation Law Manual (HALLEX), I.3.5.20 Consideration of Additional Evidence, 1993 WL

643143, at *1 (last updated December 15, 2020) ("The AC will grant review if it finds that" the

*Threet* Factors are met).

"Whether evidence qualifies for consideration [by the AC] is a question of law subject to

*de novo* review." *Padilla*, 525 F. App'x at 712. If, after de novo review of the *Threet* Factors, the

Court finds the AC improperly found that the evidence did not qualify, the Court "should" remand

to allow the AC to evaluate the ALJ's decision in light of that evidence. *Chambers v. Barnhart*,

389 F.3d 1139, 1142 (10th Cir. 2004). On the other hand, if the Court finds the new evidence does

not meet the *Threet* Factors, the Court proceeds to assess whether the evidence presented to the

ALJ supports the ALJ's decision. *Id*.

### 1.   The AC Rejected the Whalen Responses.

In its letter declining to exercise jurisdiction to review ALJ Lindsay's decision, the AC

stated it had considered Yanni's exceptions to the decision. (AR 2706–2707.) As to the Whalen

Responses, the AC stated that it had "received *and considered* the [Whalen Responses]" and noted

that "Dr. Whalen provided a treatment history and objective findings as well as his opinion

regarding claimant's ability to work and how claimant's low back pain, carpel tunnel syndrome

and shoulder pain affects her functioning." (AR 2707.) It then stated, "*We find this evidence does

not show' a reasonable probability that it would change the outcome of the decision*. We did not

*exhibit this evidence*." *Id*. (Emphasis added.).) The parties interpret this language differently. The

Commissioner argues that, because the AC stated that it "received and considered" them, the AC

considered the Whalen Responses but found they provided no basis for reversal of ALJ Lindsay's

decision. (Doc. 37.) For her part, Yanni argues the AC found that the Whalen Responses did not meet the *Threet* Factors for consideration and therefore rejected them. (Doc. 26.)

I agree with Yanni on this issue. First, the phrase "received and considered" is not dispositive; the AC had to have reviewed the Whalen Responses to determine whether they constituted evidence under *Threet* that would require the AC to review the case. *See Secatero v. Saul*, No. 19-CV-0087 SCY, 2020 WL 419463, at *5 (D.N.M. Jan. 27, 2020) (unreported) (rejecting the Commissioner's argument that the AC actually "considered" the additional evidence and concluding instead that the AC's "dismissal of the additional evidence's import [under the "reasonable probability" standard] indicate[d] that it ultimately found the evidence did not qualify for consideration at all" (quoting *Padilla*, 525 F. App'x at 712)).

Second, the AC specifically referenced the *Threet* Factors when it found that the Whalen Responses do "not show a reasonable probability that [they] would change the outcome of the decision." (AR 2707.) By finding that the Whalen Responses did not satisfy that prerequisite under *Threet*, the AC determined that further consideration of them was not required. *See Secatero*, No. CV 19-87 SCY, 2020 WL 419463, at *5 ("[T]he [AC] determines reasonable probability *before* it decides whether it will "consider" the additional evidence as part of its substantial-evidence review of the ALJ's decision. Thus, assessing whether reasonable probability exists does not equate to performing the review that the social security regulations contemplate.").

Third, the AC did not "exhibit" the interrogatories. (*Id.*) While the "AC will evaluate all additional evidence it receives," it will "only mark as an exhibit and make part of the official record additional evidence it determines meets the requirements of" the *Threet* Factors. 20 C.F.R. §§ 404.976(b), 416.1476(b). *See also* HALLEX, I.3.5.20 Consideration of Additional Evidence, 1993 WL 643143, at *1; *2 (stating that, if the AC denies the request for review because the

prerequisites for review are not met, the additional evidence is not "mark[ed] . . . as an exhibit" but is included "in the certified administrative record if the case is appealed to Federal court.");

The Commissioner asserts that "'exhibiting' evidence is a term of art" and that the AC's statement that it did not "exhibit" the evidence does not mean that it rejected the evidence. (Doc. 37 at 15.) However, the Commissioner acknowledges that, under that provision as revised, "the [AC] 'exhibits' evidence for inclusion in the agency's 'official record' only when the [AC] *grants* a request for review such that the ALJ's decision will no longer be the agency's final decision." (*Id*. at 18.) The AC may grant review of a case based on new evidence only when the *Threet* Factors are met. *Padilla*, 525 F. App'x at 712. Thus, by the Commissioner's own reasoning, the AC's statement that it did not "exhibit" the Whalen Responses means that the AC rejected the evidence.

### 2. The Whalen Responses are New, Chronologically Pertinent, and Material.

Having determined that the AC rejected the Whalen Responses[9] because they did not meet the *Threet* Factors, I review that determination de novo. *Threet*, 353 F.3d at 1191.

#### New and Chronologically Pertinent

Evidence is new "if it is not duplicative or cumulative," and evidence is chronologically pertinent if it relates to the time period on or before the ALJ's decision. *Threet*, 353 F.3d at 1191; HALLEX I-3-3-6(B)(2) ("Additional evidence is new if it is not part of the claim(s) file as of the date of the hearing decision.").

Because the Whalen Responses were prepared after the ALJ entered the decision, they are not duplicative or cumulative of evidence presented to ALJ Lindsay and were, therefore, new.

---

[9] When she submitted the interrogatories to Dr. Whalen, Yanni attached certain of Dr. Whalen's treatment records. (AR 2715.) The AC determined those medical records were not new because they duplicated records presented to ALJ Lindsay. (AR 2707.) Yanni does not dispute that finding. (Doc. 26.)

*Threat*, 353 F.3d at 1191. In addition, the Whalen Responses were chronologically pertinent because they pertain to the period of September 30, 2005, through December 31, 2010, which is within the period at issue in ALJ Lindsay's decision. *Id*.; (AR 2715, 2739, 2750 (stating the period at issue was September 30, 2005, through January 14, 2016).) The Commissioner does not dispute that the Whalen Responses were new and chronologically pertinent. (*See* Doc. 37 at 13–14.)

**Material**

In *Threat*, the Tenth Circuit construed an earlier version of 20 C.F.R. § 404.970 that required only that the additional evidence be "material" and held that "[e]vidence is material to the determination of disability 'if there is a reasonable *possibility* that [it] would have changed the outcome.'" *Threat*, 353 F.3d at 1191 (emphasis added) (quoting *Wilkins v. Sec'y, Dep't of Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir.1991)). Since that decision, §§ 404.970(a)(5) and 416.1470(a)(5) were amended to require review of a case when the additional evidence is (1) "material" *and* (2) "there is a reasonable *probability* that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5) and 416.1470(a)(5) (Emphasis added.). In the HALLEX, the Commissioner distinguishes between these two requirements, stating that "[a]dditional evidence is material if it is relevant, i.e., involves or is directly related to issues adjudicated by the ALJ" and that, as a separate inquiry, the AC "evaluate[s] the entire record along with the additional evidence to determine whether there is a reasonable probability that the additional evidence will change the outcome of the decision." HALLEX I-3-3-6(B).

Noting that *Threat* is binding precedent, courts in this district have reconciled *Threat*'s "reasonable possibility" standard and the revised regulations' "reasonable probability" standard by finding that the modification "heightens the claimant's burden to prove materiality: whereas the previous test required merely a reasonable *possibility* of changing the outcome, now it requires

a reasonable *probability* of changing the outcome." *Bisbee v. Berryhill*, No. 18-CV-0731 SMV, 2019 WL 1129459, at *3 n.5 (D.N.M. Mar. 12, 2019). *See, e.g., Hanna v. Kijakazi*, No. 1:20-CV-00132-KRS, 2021 WL 3169203, at *5 (D.N.M. July 27, 2021) ("[I]n determining whether Plaintiff's additional evidence was *material*, the Court will consider whether "there is a reasonable [probability] that [the evidence] would have changed the outcome" had it been accepted by the AC."). In addition, because the post-*Threet* amended version of §§ 404.970 and 416.1470 includes a "'reasonable probability' requirement *in addition to* the 'new, material, and relate[d] to' requirements for qualifying additional evidence, some courts have analyzed materiality and the "reasonable probability" requirement as distinct inquiries. *See, e.g.*, *Hale v. Saul*, No. CV 19-902 KK, 2020 WL 7872356, at *5 n.7 (D.N.M. Oct. 1, 2020) (Emphasis added.)).

Here, although the AC addressed the newness and chronologically pertinent prongs of the *Threet* analysis, it did not mention the materiality of the Whalen Responses separately from whether their consideration would have changed the outcome. (AR 2707 ("We find this evidence does not show a reasonable probability that it would change the outcome of the decision."). Similarly, both parties address whether the Whalen Responses are material by addressing only the reasonable probability question. (Docs. 26 at 11, 37 at 19.) To the extent the materiality and reasonable probability questions are distinct, I find the Whalen Responses are material under the Commissioner's definition of material evidence, which is evidence that "involve[d] or [were] directly related to issues adjudicated by the ALJ." HALLEX I-3-3-6(B). *See Hale*, No. CV 19-902 KK, 2020 WL 7872356, at *5 (rebuttal evidence was new under the Commissioner's definition of materiality in the HALLEX). The Whalen Responses fit this definition because they addressed specific findings and conclusions in ALJ Lindsay's Decision. (AR 2739.)

I therefore turn to whether Yanni has shown there is a reasonable probability that the Whalen Responses "would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Determining whether new evidence would have changed an ALJ's decision depends on the issues and the record before the ALJ. *See, e.g.*, *Green v. Kijakazi*, No. CV 22-42 GBW, 2023 WL 2731736, at *6 (D.N.M. Mar. 31, 2023) (considering the new evidence in light of the ALJ's findings and the other evidence in the record); *Barone v. Kijakazi*, No. 21-CV-0068 SMV, 2022 WL 1239956, at *4 (D.N.M. Apr. 27, 2022) (same). Similarly, the impact of new evidence depends in part on the regulations guiding the ALJ's treatment of certain opinions. Under the regulations applicable here,[10] a treating source's medical opinions must be given controlling weight if they are "well[]supported [by medically acceptable clinical and laboratory diagnostic techniques] and not inconsistent with the other substantial evidence in the case record . . . ." *Titles II & XVI: Giving Controlling Weight to Treating Source Med. Opinions*, SSR 96-2P, 1996 WL 374188 (S.S.A. July 2, 1996); 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2). Whether a "medical opinion is well-supported will depend on the facts of each case" and is "a judgment that adjudicators must make . . . [that] requires an understanding of the clinical signs and laboratory findings in the case record and what they signify." SSR 96-2P (S.S.A. July 2, 1996).

Relying on MRI studies, ALJ Lindsay gave Dr. Whalen's opinions only partial weight because she found they were not well-supported by medically acceptable clinical and laboratory diagnostic techniques and were inconsistent with other evidence in the record. (AR 2760.) ALJ

---

[10] The Social Security Administration issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017. *Compare* 20 C.F.R. §§ 416.927, 404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017"), *with* 20 C.F.R. §§ 416.920c, 404.1520c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017"). However, because Yanni filed her claim before March 27, 2017, the previous regulations apply to this matter.

Lindsay concluded that such "objective studies showed that [Yanni's limitations] were not as severe as Dr. Whalen's opinion would suggest." *Id*. In addition, as discussed above, ALJ Lindsay relied on Dr. Whalen's April 2014 treatment note finding no "radicular symptoms" to conclude that Dr. Whalen's opinions were inconsistent with the longitudinal record. *Id*.

Dr. Whalen stated in his Responses that the diagnostic testing he performed—provocative lumbar discography—"is in fact an objective study" that is more sensitive to diagnosing annular tears than MRIs and that it "is possible to have a completely normal appearing MRI" even when provocative lumbar discography "show[s] annular tear with injection of the injured disc producing concordant pain. This is in fact the finding[] with regard to Yanni." (AR 2740.) He also stated that "[i]njuries to lumbar disks rarely spontaneously heal and in fact the natural history more often than not is to gradually deteriorate over time." *Id*. Yanni argues that ALJ Lindsay did not understand the significance of the difference between provocative lumbar discography and that, if the Whalen Responses would have prompted ALJ Lindsay to find Dr. Whalen's opinions were well-supported, there is a reasonable probability that her decision would have been different. (Doc. 26 at 12.)

Given ALJ Lindsay's reliance on MRI results to find that Dr. Whalen's opinions were not well-supported by accepted diagnostic techniques and the fact that she did not discuss provocative lumbar discography, I find the information in the Whalen Responses about the sensitivity of MRIs to annular tears, provocative lumbar discography, the pain associated with annular tears even without herniation, and whether annular tears heal or improve over time have a reasonable probability of changing ALJ Lindsay's analysis of Dr. Whalen's opinion and, ultimately, her decision. *Cf. Muskett v. Saul*, No. CV 20-0006 KK, 2021 WL 826675, at *8–9 (D.N.M. Mar. 4, 2021) (holding that the claimant's late-submitted additional evidence had a reasonable probability to change the outcome where the ALJ rejected the treating physician's conclusory statement that

the claimant could not work and the additional evidence consisted of the physician's medical assessments, of which there were none in the record before the ALJ). The AC erred in finding otherwise.

**Good Cause**

When she submitted the Whalen Responses to the AC, Yanni asserted that she had good cause for their late submission. (AR 3049.) In its order denying Yanni's request for review of her case, the AC mentioned Yanni's good cause arguments but did not make a finding as to this requirement, instead rejecting the Whalen Responses because their consideration would not change ALJ's decision. (AR 2707.) On appeal, Yanni reiterates that she had good cause for late submission of the Whalen Responses. (Doc. 26.) The Commissioner did not respond to those arguments. (Doc. 37.) Neither party addressed the scope of the Court's review under these circumstances. (Docs. 26, 37, 40.)

I recommend the Court decline to analyze whether Yanni had good cause to submit the Whalen Responses late because the issue is not disputed and, therefore, not squarely before the Court. *See, e.g.*, *Hanna*, No. 1:20-CV-00132-KRS, 2021 WL 3169203, at *4 n.4 (declining to address good cause because "the Commissioner d[id] not dispute [the claimant's] assertion that good cause existed in her case"); *Muskett*, No. CV 20-0006 KK, 2021 WL 826675, at *4–5 (declining to address good cause where the Commissioner took no position on the claimant's arguments that good cause existed); *Bleau v. Saul*, No. CV 19-300 KK, 2020 WL 1049252, at *6

(D.N.M. Mar. 4, 2020) (declining to address the issue where the claimant argued she had good cause and the Commissioner took no position).[11, 12]

I find the Whalen Responses were new, chronologically pertinent, and material as defined by the HALLEX and by *Threet*. Because the Commissioner does not dispute that Yanni had good cause to submit them after ALJ Lindsay issued her Decision, I further find the AC erred in rejecting the Whalen Responses.

## C. Immediate Benefits

Having found that remand is warranted because ALJ Lindsay did not follow the Court's order or the AC's instructions and because the AC erroneously rejected the Whalen Responses, I recommend remanding this matter for an immediate award of benefits rather than further proceedings. *See* 42 U.S.C. § 405(g) (empowering courts to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing."). Although far from routine, courts in this district have remanded for immediate award of benefits when they have

---

[11] *See also Bisbee*, CV 18-731 SMV, 2019 WL 1129459, at *5 n.6 (declining to address good cause because "the [AC] did not exclude the report because [the p]laintiff lacked good cause, *and the Commissioner does not dispute that good cause exists here*") (emphasis added); *Copelin v. Saul*, No. CV 18-727 KK, 2019 WL 4739536, at *7 n.17 (D.N.M. Sept. 27, 2019) (declining to address good cause because *neither the AC nor the Commissioner contended* that the plaintiff failed to satisfy the requirement); *Arellano v. Saul*, No. CV 18-600 KK, 2019 WL 4016280, at *6 n.8 (D.N.M. Aug. 26, 2019) (declining to address good cause because neither "*the record nor the parties' arguments on appeal*" make reference to the requirement) (emphasis added); *Lean v. Saul*, No. CV 18-505 SCY, 2019 WL 3457830, at *20-21 (no discussion of presence or absence of good cause where the issue was not raised in the briefing).

[12] I recognize that some courts in this district have held that, under de novo review, the Court must assess whether the claimant had good cause even if the AC did not rely on that ground to reject the claimant's untimely evidence. *See, e.g.*, *Hite v. Saul*, 457 F. Supp. 3d 1175, 1183 (D.N.M. 2020) (whether the "AC was right, wrong, or silent on the good cause question is irrelevant because this Court is required to take a fresh look at that question altogether unburdened by what the AC thought about it"). However, before the Court can conduct that review, the parties must dispute the issue and present argument to the Court. In *Hite*, for example, the Court noted that, unlike in *Bisbee*, *Copelin*, *Arellano*, and *Lean*, the "Commissioner disput[ed] whether [the claimant] showed good cause at the time he submitted additional evidence to the AC . . . ." *Id. See Marquez v. Saul*, No. 1:20-CV-00110-KRS, 2021 WL 2073510, at *4 n.3 (D.N.M. May 24, 2021) (reviewing whether the claimant had good cause de novo because the Commissioner "disputed the presence of good cause" and the claimant "addressed that issue without arguing that the Court should not do so").

been pending for longer than eight years and/or have been appealed to the district court more than two times. *See, e.g.*, *Maldonado v. Kijakazi*, No. 1:22-CV-0554 DLM, 2023 WL 4235637, at *3–4 (D.N.M. June 28, 2023) (remanding for immediate award of benefits where the disability claim was still "unresolved after more than seven years and three appeals to this Court"); *Tilla v. Kijakazi*, No. CV 22-04 JFR, 2022 WL 16572392, at *12–13 (D.N.M. Nov. 1, 2022) (ten years and three appeals); *Jennifer S. v. Kijakazi*, No. 20-CV-1021-SCY, 2022 WL 860369, at *11–12 (D.N.M. Mar. 23, 2022) (11 years and three appeals); *Rees v. Kijakazi*, No. 2:20-00575-KWR-LF, 2021 WL 5416225, at *9 (D.N.M. Nov. 19, 2021), *R&R adopted*, 2021 WL 5769476 (D.N.M. Dec. 6, 2021) (ten years and three appeals); *Mendoza-Martinez v. Kijakazi*, No. 20-CV-0310 SMV, 2021 WL 5207074, at *9 (D.N.M. Nov. 9, 2021) (12 years with three appeals). In the Tenth Circuit, courts should consider both "the length of time the matter has been pending and whether or not given the available evidence, remand for additional fact-finding would serve any useful purpose [or] merely delay the receipt of benefits." *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (internal quotation marks, brackets, and citations omitted).

While courts may consider whether the record supports a finding of disability, a finding that the claimant is disabled as a matter of law is not required before the Court may remand for an award immediate benefits. *See, e.g., Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993) (finding the record inadequate to "satisfy the [Commissioner's] step five burden" and remanding for immediate benefits without assessing whether further fact-finding applying the right standards might result in denial of benefits); *Huffman v. Astrue*, 290 F. App'x 87, 89–90 (10th Cir. 2008) (remanding for immediate benefits where the ALJ's decision was too vague to review); *Trujillo v. Kijakazi*, No. CV 22-120 KWR/JFR, 2023 WL 2135564, at *11 (D.N.M. Feb. 21, 2023) (holding that there is no requirement that the record show that the claimant is disabled as a matter of law

before a court may remand for immediate benefits), *report and recommendation adopted,* No. 1:22-CV-00120 KWR/JFR, 2023 WL 2413778 (D.N.M. Mar. 8, 2023).

There is little question that the prolonged procedural history and repeated reversals of the Commissioner's decision on the same ground weigh in favor of an immediate award of benefits. Yanni's eligibility for benefits during the relevant period remains unresolved after more than twelve years. Yanni has met her burden to show disability at the first four steps of the five-step sequential analysis each of the four times that an ALJ considered her claim. *Grogan*, 399 F.3d at 1261 (claimant bears the burden at steps one through four and the Commissioner bears the burden at step five). Each appeal raised the same error in treatment of Dr. Whalen's opinions, and the Commissioner, recognizing that ALJ Gontis had not corrected that error, voluntarily remanded one appeal. Moreover, Judge Yarbrough in 2017 and Judge Garza in 2019 pointed out the requirements for evaluation of Dr. Whalen's opinions and ordered the Commissioner to conduct that analysis. (AR 1208–1210, 2249–2261.) In 2021, the AC ordered the ALJ to explain why the evidence supporting Dr. Whalen's opinion was rejected, even specifying that evidence in detail. (AR 2851–2852.) Nevertheless, the latest unfavorable decision does not include that explanation. The Commissioner "is not entitled to adjudicate a case '*ad infinitum* until [he] correctly applies the proper legal standard and gathers evidence to support [his] conclusion.'" *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993) (quoting *Thaete v. Shalala*, 826 F. Supp. 1250, 1252 (D. Colo. 1993)).

Furthermore, I find that remanding for additional fact-finding would not be useful because the Commissioner has repeatedly failed to conduct and/or articulate the correct analysis of the evidence already in the record despite clear instructions to do so by the Court and the AC. *See Huffman*, 290 F. App'x at 90 (remanding for an immediate award of benefits where the ALJ's

decision was too vague for meaningful review, the case had previously been remanded, and the matter had been pending for over six years); *Serafin v. Berryhill*, No. 18-CV-1053 SMV, 2019 WL 3843051, at *6 (D.N.M. Aug. 15, 2019) (remanding for immediate benefits where, "[d]espite . . . explicit instructions, and despite clear law on the evaluation of medical source opinions, the Commissioner failed to apply the correct legal standards in evaluating the" medical source opinions); *cf. Herrera v. Kijakazi*, No. CV 21-0227 KBM, 2022 WL 604728, at *4 (D.N.M. Mar. 1, 2022) ("[T]he ALJ's disregard of the Appeals Council's unambiguous instructions on remand undermines the Court's confidence that the Agency would, on yet a fifth opportunity to review the evidence in this case, apply the proper legal standards and render a decision supported by substantial evidence."). Moreover, the Commissioner has not pointed to any need for further fact-finding, arguing instead that remand for immediate benefits would encroach on the Commissioner's "congressionally delegated role as fact finder." (Doc. 37 at 22.) But the Commissioner has had four opportunities to fulfill that role in accordance with the applicable regulations and has not met his burden to do so, causing years-long delay in disposition of this case. *See Ragland*, 992 F.2d at 1060 (remanding for immediate benefits "[i]n light of the [Commissioner's] patent failure to satisfy the burden of proof at step five, and the long delay that has already occurred as a result of the [Commissioner's] erroneous disposition of the proceedings . . . .").

A finding that the AC improperly rejected a claimant's new evidence typically requires remand for the AC to consider the ALJ's decision in light of that evidence. *Chambers*, 389 F.3d at 1142. Here, however, the AC found both that ALJ Lindsay's Decision complied with Judge Garza's order and its prior instructions *and* that the Whalen Responses would not change the outcome. I find both of those decisions were error. Given the length of these proceedings and the

reasons for Yanni's appeals, I find that remand to the AC for another review of ALJ Lindsay's inadequate decision would simply prolong this matter untenably. I therefore recommend the Court exercise its discretion to remand with an order for an award of immediate benefits.

**VI.     Conclusion**

I find ALJ Lindsay did not follow Judge Garza's or the AC's instructions for review of Dr. Whelan's opinions following remand and, therefore, violated the Mandate Rule. I also find the AC erred in declining to review the Whalen Responses. Finally, I find this case's procedural history weighs in favor of an immediate award of benefits and that remand for further fact-finding is unwarranted.

**IT IS THEREFORE RECOMMENDED** that Yanni's Motion to Reverse for Immediate Benefits (Doc. 26) be **GRANTED**, and this matter **REMANDED** for an award of immediate benefits.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE